# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3728WA

_____

Alton R. Kelley and Jan Kelley,      *
                                     *
            Appellants,              *
                                     *
      v.                             *
                                     *
Georgia-Pacific Corporation and      *
Jimmy Marvin Branch, Jr.,            *
                                     *
            Appellees.               *   On Appeal from the United
                                     *   States District Court
---------------------------          *   for the Western District
                                     *   of Arkansas.
Alton R. Kelley,                     *
                                     *
            Appellant,               *
                                     *
      v.                             *
                                     *
Georgia-Pacific Corporation,         *
                                     *
            Appellee.                *

_____

Submitted:  August 2, 2002

Filed:  August 14, 2002 (Corrected: August 29, 2002)

_____

Before McMILLIAN, RICHARD S. ARNOLD, and BOWMAN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Alton Kelley filed suit against Georgia-Pacific Corporation and Jimmy Branch alleging retaliation under Title VII and outrage under Arkansas law.[1] The District Court granted summary judgment in favor of Georgia-Pacific on Mr. Kelley's Title VII claim. After conducting further discovery, the District Court also granted summary judgment in favor of Georgia-Pacific and Mr. Branch on Mr. Kelley's outrage claim.[2] He appeals this judgment, and we affirm.[3] Only state-law questions are raised on appeal.

---

[1] Mr. Kelley's wife, Jan, joined the lawsuit on the claim of outrage.

[2] The Hon. Harry F. Barnes, United States District Judge for the Western District of Arkansas.

[3] On appeal, Mr. Kelley also contends that he presented sufficient facts to establish a wrongful termination claim. Because he did not raise this issue in the District Court, it is not before us on appeal. In any event, plaintiff's wrongful-termination claim is without merit. The claim is based on a statement by Georgia-Pacific's Board Chairman contained in a letter sent after this action was commenced. The statement promises every employee freedom from discrimination, whether based on age, race, sex, color, religion, national origin, sexual orientation, disability, or any other factor prohibited by law. The plaintiff argues that his termination was a breach of the last clause of this promise, that is, that he was discharged because of discrimination based on some factor, other than those specifically listed, prohibited by law. We do not think that the facts of this case can be made to fit such a pattern. The word "discrimination" normally refers to an unjustified differentiation between classes of employees. Plaintiff's theory here, by contrast, is that he was discharged on account of his having reported to the employer conduct believed by the plaintiff to be immoral or illegal. To discharge an employee on such a basis may be morally unjustified or even, in the extraordinary case, unlawful, but it does not fit within the rubric of discrimination. In addition, the conduct engaged in by plaintiff that is at issue in this case had all taken place by the time of the issuance of the Chairman's statement. It cannot be argued that the plaintiff was relying upon the statement.

II.

Mr. Kelley, an employee at will, began work at Georgia-Pacific in 1986 as a shift supervisor. In March 1996, he was promoted to a plant manager. At that time, Jimmy Branch became his direct supervisor. In May 1997, Mr. Kelley's nineteen-year-old daughter, Natalie Kelley, was introduced to Mr. Branch and Mr. Branch's wife, Segay. Later that month, Segay, according to plaintiff's evidence, took Natalie to Monroe, Louisiana, bought her alcohol, provided her with the narcotic Loracet, and persuaded her to dance topless at a strip club called the Mirage Lounge. Several days later Mr. Branch accompanied Segay and Natalie to Monroe where he watched both his wife and Natalie dance topless at the Mirage Lounge. Mr. Branch told Natalie not to tell her parents where she was, whom she was with, or what she was doing because Mr. Branch had to work with her father, and such information might strain their working relationship. Soon after these events, Natalie told her father about her activities with the Branches.

In response, Mr. Kelley complained to the Human Resources Department at Georgia-Pacific headquarters. Mr. Kelley also called Georgia-Pacific's 1-800 hotline number provided to employees in order to resolve employee disputes. Mr. Kelley stated that he needed help resolving a personal issue with Mr. Branch that involved Mr. Kelley's daughter. In response to these requests, a meeting was scheduled with Mr. Kelley, Mr. Branch, and Robert Wolfe, a human resources manager. Mr. Kelley reported that this meeting was conducted in a civil fashion and was appropriate for the workplace.

During the months that followed, Mr. Kelley contends, Mr. Branch sent several e-mails to various people within Georgia-Pacific citing Mr. Kelley's poor work performance. Then, in October 1998, Mr. Kelley silenced an alarm that had sounded on the pollution-control equipment within the plant and directed that work continue despite the alarm. In response to this incident and Mr. Kelley's poor work

performance, Terry Christiansen, a Georgia-Pacific Vice President, terminated Mr. Kelley's employment.

## III.

We review the grant of summary judgment de novo. Iowa Coal Min. Co. v. Monroe County, 257 F.3d 846, 852 (8th Cir. 2001). After viewing the evidence in the light most favorable to the non-moving party, we will affirm the grant of summary judgment if there are no genuine issues of material fact. Id.

Under Arkansas law, to establish a claim for outrage a plaintiff must prove the following:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

McQuay v. Guntharp, 331 Ark. 466, 470, 963 S.W.2d 583, 585 (1998) (internal quotations omitted). Merely describing certain conduct as outrageous does not make it so under Arkansas law. Renfro v. Adkins, 323 Ark. 288, 914 S.W.2d 306, 312 (1996). The District Court correctly pointed out that the standard that a plaintiff must meet in order to satisfy the elements of outrage in Arkansas "is an exceptionally high one." D. Ct. Op. 5. See Poindexter v. Armstrong, 934 F. Supp. 1052, 1057 (W.D. Ark. 1994). Additionally, in the employment context the standard is even higher. Palmer v. Arkansas Council on Economic Education, 344 Ark. 461, 40 S.W.3d 784 (2001). The District Court determined that the allegedly outrageous acts that Mr.

Kelley complained of did not rise to the strict standard necessary to establish a claim of outrage. We agree and affirm.

The acts that Mr. Kelley contend are "outrageous" start with the Branches taking Natalie Kelley to the strip club in Louisiana and watching her dance topless. Mr. Kelley alleges that following his complaints about this incident, he was "set up" to be terminated from Georgia-Pacific. Mr. Kelley claims that Mr. Branch wrote inaccurate e-mails regarding his performance at work, that he was excluded from meetings, and that he was verbally harassed. While we cannot say that the Branches' actions were appropriate, the conduct was not "beyond all possible bounds of decency." Natalie Kelley was nineteen years old at the time she accompanied the Branches to Monroe, a legal adult for most purposes. With regard to the actions taken by Georgia-Pacific, Mr. Kelley admitted in his deposition that Mr. Branch's e-mails regarding his work performance did not contain any inaccurate information, and that he was not verbally harassed. This conduct falls short of the standard necessary to sustain a claim of outrage. See Palmer, 344 Ark. at 474-75, 40 S.W.3d at 792 (finding insufficient evidence to support claim of outrage when employee, after 31 years on the job, received improper written reprimand, was improperly placed on probation, and was wrongfully terminated). Therefore, summary judgment was appropriate on the outrage claim.

Accordingly, we affirm the decision of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-